## ADVERSARY PROCEEDING COVER SHEET
(Instructions on Reverse)

**ADVERSARY PROCEEDING NUMBER** (Court Use Only)

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| John O. Desmond, the Chapter 7 Trustee of Romulo A. Rodrigues-Aguiar | Romulo A. Rodrigues-Aguiar |

| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (If Known) |
|---|---|
| Jeffrey D. Ganz, Esquire<br>Riemer & Braunstein LLP<br>Three Center Plaza, Boston, MA 02108<br>(617) 523-9000 | |

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| ☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☐ Other<br>■ Trustee | ■ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
This action is brought by the Chapter 7 Trustee objecting to the Debtors' discharge under 11 U.S.C. §727.

### NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) - Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) — Objection/Revocation of Discharge**
■ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) — Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) — Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) - Dischargeability (continued)**
☐ 61-Dischargeability- §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) - Injunction Relief**
☐ 71-Injunctive relief— reinstatement of stay
☐ 72-Injunctive relief— other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et seq.*
☐ 02-Other (*e.g.*, other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

| BANKRUPTCY CASE IN WHICH ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR:<br>Romulo A. Rodrigues-Aguiar | | BANKRUPTCY CASE NO.:<br>15-12640 (MSH) | |
| DISTRICT IN WHICH CASE IS PENDING:<br>Massachusetts | DIVISIONAL OFFICE:<br>Eastern | NAME OF JUDGE:<br>Melvin S. Hoffman | |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY PROCEEDING |
| DISTRICT IN WHICH CASE IS PENDING | DIVISIONAL OFFICE | | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>/s/ Jeffrey D. Ganz | | | |
| DATE:<br>February 10, 2016 | PRINT NAME OF ATTORNEY (OR PLAINTIFF):<br>Jeffrey D. Ganz (#564375) | | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, if it is required by the court. In some courts, the cover sheet is not required when the adversary proceeding is filed electronically through the court's Case Management/Electronic Case Files (CM/ECF) system. (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and the defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and in the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

UNITED STATES BANKRUPTCY COURT FOR THE
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>ROMULO A. RODRIGUES-AGUIAR,<br>        Debtor. | Chapter 7<br>Case No. 15-12640 (MSH) |
| JOHN O. DESMOND, TRUSTEE FOR THE CHAPTER 7 DEBTOR, ROMULO A. RODRIGUES-AGUIAR,<br><br>        Plaintiff,<br><br>v.<br><br>ROMULO A. RODRIGUES-AGUIAR,<br><br>        Defendant. | Adversary Proceeding No.: _____ |

## **COMPLAINT**

John O. Desmond, the court-appointed Chapter 7 Trustee (the "Trustee") of Romulo A. Rodrigues-Aguiar (the "Debtor"), brings this action pursuant to 11 U.S.C. § 727 objecting to the discharge of debts sought by the Debtor. As grounds for the relief sought in this Complaint, the Trustee asserts that the Debtor has transferred, removed, and concealed his property with the intent to hinder, delay, or defraud his creditors and the Trustee within one year before the date on which he filed his voluntary petition. In addition, the Debtor has failed to explain satisfactorily the loss of assets or deficiency of assets to meet his liabilities. In this regard, the Debtor has also refused to provide testimony concerning the disposition of certain of his assets prior to the filing of his voluntary petition. The Debtor has also made false oaths in connection with this bankruptcy case by failing to disclose income, assets, and transfers of assets on his Schedules and Statement of Financial Affairs.

In light of the foregoing, as more specifically outlined below, the Trustee seeks an order denying the Debtor's discharge.

## I. Parties and Jurisdiction

1. The Trustee is an individual with a usual place of business at 24 Union Avenue, No. 23, Framingham, Massachusetts and he is the Trustee of the Debtor's Chapter 7 bankruptcy estate.

2. Romulo A. Rodrigues-Aguiar (the "Debtor") is an individual residing at 19 One Salem Street, Swampscott, Massachusetts.

3. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and Rule 201 of the Local Rules of the United States District Court for the District of Massachusetts.

4. This a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J). To the extent that all or a portion of the Trustee's claims are adjudged to be non-core, the Trustee expressly consents to the entry of final orders or judgment by the bankruptcy judge.

5. Venue in this Court is proper pursuant to 28 U.S.C. § 1409.

## II. Facts Common to All Counts

### 27 Lynde Street, Everett, Massachusetts

6. The Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code on July 2, 2015 (the "**Petition Date**").

7. On January 21, 2014, the Debtor and his spouse, Elizandra Aguiar (collectively, the "**Aguiars**") acquired the real property at 27 Lynde Street, Everett, Massachusetts ("**27 Lynde**") from Joseph P. Marchese, Jr. and Michael Marchese for the stated consideration of

2

$345,000. They agreed to pay the Marcheses this sum over time and, to secure that obligation, the Aguiars granted them a mortgage against 27 Lynde.

8. One or more of the payments made in satisfaction of the Debtor's debt to the Marcheses were paid from the funds of Supreme Cars, Inc. ("**Supreme**"), a corporation owned and controlled by the Debtor. These payments on behalf of the Debtor reflect income to the Debtor during 2014 that do not appear on his tax returns or on his Statement of Financial Affairs.

9. Upon information and belief, 27 Lynde was occupied by tenants during the time that the Aguiars owned it and they collected rent from those tenants. That rent was not disclosed in the Debtor's Schedules and Statement of Financial Affairs. The rent was also not identified on the Debtor's federal tax return for 2014.

10. On or about February 24, 2015, the Aguiars entered into a transaction with Ramior Queiroz ("**Queiroz**") which purports to be a sale of 27 Lynde to Queiroz for the stated consideration of $400,000. According to an "agreement" executed by the Aguiars and Queiroz, the consideration for the sale was $100,000 in cash plus the assumption of the existing mortgage by Queiroz which, at that time, is alleged to have an outstanding balance of $300,000.

11. Queiroz, through his counsel, has asserted that he delivered the $100,000 in cash for this sale to the Aguiars in two steps. First, by delivering $60,000 in cash to the Aguiars on or about February 24, 2015 and, second, by providing $40,000 in cash advances via a credit card in March and April 2015.

12. In contrast, the Debtor asserts that the transaction with Queiroz was an "illegal" loan by which Queiroz extended $40,000 in credit to the Debtor's business, Supreme on onerous terms and required the Debtor to secure satisfaction of that debt by delivering a deed to

3

Queiroz transferring 27 Lynde to him from the Aguiars. That deed was delivered to Queiroz and ultimately recorded on July 1, 2015, just one day before the Petition Date.

13. Irrespective of how the 27 Lynde transaction with Queiroz is characterized, the Debtor did not disclose any of the following information in his Schedules or Statement of Financial Affairs:

a. That he ever had an ownership interest in 27 Lynde;

b. That he signed a deed relating to his interest in 27 Lynde within the one year period prior to the Petition Date;

c. That he received between $40,000 and $100,000 in cash as part of this transaction; and

d. That he caused all or a portion of those funds to be transferred to Supreme.

14. In addition and, again, regardless of which set of events reflects what actually happened, the Debtor cannot now account for the $60,000 in cash purportedly delivered to him by Queiroz, the $40,000 which Queiroz and the Debtor agree was delivered to the Debtor, and that the Debtor is no longer an owner of 27 Lynde.

*19 One Salem Road, Swampscott, Massachusetts.*

15. On or about November 10, 2014, just nine months before the Petition Date, the Debtor and his spouse acquired their current residence at 19 One Salem Road, Swampscott, Massachusetts from a trust controlled by Joseph P. Marchese, Jr., and Michael Marchese, for $850,000. In connection with that transaction, the Debtor claims to have paid $170,000 in cash and incurred mortgage debt to Everett Cooperative Bank of $680,000. At least $30,000 of the cash component of the purchase price (and possibly $100,000 or more) came from Supreme Cars.

16. In addition to the mortgage debt, the Debtor incurred an unsecured obligation to Michael Marchese the amount of $70,000 in connection with the purchase of this residence. Upon information and belief, some or all of the payments made by the Debtor to Everett Cooperative Bank and Michael Marchese were paid by Supreme. The sums paid by Supreme on behalf of the Debtor comprise income to him in 2014 and possibly 2015 which the Debtor did not disclose on his Schedules or Statement of Financial Affairs. To the extent that these sums were paid in 2014, they were also not disclosed in the Debtor's 2014 income tax return.

### *Supreme Cars, Inc.*

17. For several years prior to the Petition Date, the Debtor was the sole owner and manager of Supreme, a used car dealership with several locations in the Boston area. On June 15, 2015, the Debtor entered into a Business Purchase Agreement (the "**BPA**") in which he agreed to sell his entire ownership interest in Supreme to Keila Maria Rodriguez and Yuridania Suero for the sum of $125,000.

18. Pursuant to the terms of the BPA, the buyers were acquiring 100% of the shares of stock of Supreme, subject to all of its outstanding debts – many of which were identified in the BPA. The Debtor did not, however, secure the consent to this sale from Supreme's creditors in advance of the transaction, nor did he negotiate a release of his personal liability for Supreme's debts with them. As a result, the sale of the stock in Supreme appears to have left the Debtor with substantial personal debts arising from that business and very few assets to satisfy them. Indeed, most, if not all, of the claims filed in the Debtor's bankruptcy case arose from his involvement with Supreme.

19. The Debtor admits that the buyers of Supreme's stock delivered $125,000 in cash to him, but asserts that he gave all of those funds to his wife to pay certain undisclosed debts

and expenses. Otherwise, the Debtor has failed and refused to account for that cash. More specifically, the Debtor has refused to provide testimony at his initial meeting of creditors concerning the use to which these funds were put and he has recently claimed, through his counsel, that he is disqualified from testifying about the disposition of these funds because his knowledge is based on communications he claims to have had with his wife. On this same basis, the Debtor has refused to provide any documentation concerning the disposition of this $125,000 sum.

### *Dissipation of Cash Prior to the Petition Date*

20.  In his Schedules, the Debtor lists $500 cash on hand and no other sums. Indeed, he does not list having an interest in any bank account on the Petition Date. He also does not list any payments to creditors within 90 days prior to the Petition Date in his Statement of Financial Affairs. He does disclose, however, that he earned only $45,000 in the two years prior to his Petition Date and that his spouse earns no income.

21.  Notwithstanding these representations, the Debtor recently disclosed his interest in a certain bank account maintained at Bank of America, N.A. in which both he and his wife had an interest. A statement from that bank account revealed that more than $60,000 in deposits were made into that account during the five week period prior to the Petition Date. In response to questioning about these deposits at his initial meeting of creditors, the Debtor could not provide any specific information and he refused to provide testimony about them, asserting that he was disqualified from doing so because his knowledge is based on communications he claims to have had with his wife (at the meeting of creditors, however, the Debtor also stated that he had no such communications).

6

22. The statement from this account reveals that there was more than $51,000 in cash in it on June 26, 2015. Nearly $28,000 was withdrawn between that date and the Petition Date and $20,710 was withdrawn on the day immediately following the Petition Date. When asked about these withdrawals at his initial meeting of creditors, the Debtor could not provide any specific information and he refused to provide testimony about them, asserting that he was disqualified from doing so because his knowledge is based on communications he claims to have had with his wife (at the meeting of creditors, however, the Debtor also stated that he had no such communications).

## COUNT I

*(To Deny the Debtor a Discharge of Debts under 11 U.S.C. § 727(a)(2))*

23. The Trustee re-states and re-alleges all of the allegations contained in paragraphs 1-22 above and incorporates them into this count.

24. As detailed above, the Debtor – with the actual intent to hinder, delay, or defraud his creditors - transferred, removed, or concealed, or permitted to be transferred removed, or concealed the following property of the debtor within one year before the Petition Date:

   a. The proceeds from the transaction with Queiroz concerning 27 Lynde or, alternatively, the Debtor's interest in 27 Lynde;

   b. The proceeds from the sale of the Debtor's interest in Supreme; and

   c. At least $28,000 in cash that was in the Bank of America account prior to the Petition Date.

25. The Debtor's fraudulent intent is evidenced by the following facts, events, and circumstances, among others that may be adduced during discovery (which is ongoing) and at trial:

a. When the Debtor agreed to transfer his interest in 27 Lynde to Queiroz, but retained the personal liability for the underlying mortgage debt, he was insolvent or rendered insolvent by that transaction.

b. When the Debtor sold his interest in Supreme, but retained personal liability for certain of the debts incurred by that business, he was insolvent and remained insolvent until at least the Petition Date.

c. The Debtor transferred funds from received from Queiroz to his wife and/or to Supreme, both of which are insiders.

d. The Debtor transferred the funds from the sale of his stock in Supreme to his wife.

e. The Debtor engaged in these transfers while under threat of suit from his creditors including, without limitation, Joseph P. Marchese, Jr. and Michael Marchese, the holders of the mortgage recorded against 27 Lynde.

f. The Debtor has concealed these transactions by failing to maintain appropriate documentation and refusing to provide testimony about them.

g. The transfer by the Debtor of his interests in 27 Lynde, Supreme, and the cash in his Bank of America bank account represented substantially all of his assets.

26. Based on the same facts, events, and circumstances the Debtor – with the actual intent to hinder, delay, or defraud his creditors - transferred, removed, or concealed, or permitted to be transferred removed, or concealed at least $20,170 contained in his account at Bank of America, N.A. after the Petition Date.

27. In light of the foregoing, the Court should enter an order denying the Debtor's discharge of debts under 11 U.S.C. §727(a)(2).

## COUNT II

*(To Deny the Debtor a Discharge of Debts under 11 U.S.C. § 727(a)(3))*

28. The Trustee re-states and re-alleges all of the allegations contained in paragraphs 1-27 above and incorporates them into this count.

29. Despite requests from the Trustee for both documentation and testimony, the Debtor has failed to provide documentation concerning his income prior to the Petition Date, the transaction with Queiroz involving 27 Lynde, the sale of his stock in Supreme, and the deposits into and transfers out of the Bank of America account he shared with his spouse prior to and after the Petition Date.

30. The Debtor has, therefore, concealed, destroyed, falsified, or failed to keep or preserve any recorded information from which his financial condition or business transactions might be ascertained. The Debtor was not justified in doing so.

31. In light of the foregoing, the Court should enter an order denying the Debtor's discharge of debts under 11 U.S.C. §727(a)(3).

## COUNT III

*(To Deny the Debtor a Discharge of Debts under 11 U.S.C. § 727(a)(4))*

32. The Trustee re-states and re-alleges all of the allegations contained in paragraphs 1-31 above and incorporates them into this count.

33. The Debtor knowingly made false oaths or accounts in connection with this bankruptcy case when he failed to disclose, among other things to be adduced at trial, the following facts, events, and circumstances in his Schedules or his Statement of Financial Affairs:

    a. That he ever had an ownership interest in 27 Lynde;

    b. That he received rent from the tenants at 27 Lynde;

    c.      That he transferred that ownership interest within the one year period prior to the Petition Date;

    d.      That he received between $40,000 and $100,000 from Queiroz in connection with 27 Lynde; and

    e.      That he caused all or a portion of those funds to be transferred to Supreme.

    f.      That the payments made in satisfaction of the Debtor's debt to the Marcheses arising from his acquisition of 27 Lynde was paid from the funds of Supreme and, therefore, income to the Debtor which was not disclosed;

    g.      The Debtor caused Supreme to make some or all of the payments made by the Debtor to Everett Cooperative Bank and Mr. Marchese in connection with the Debtor arising from his purchase of his residence in Swampscott and reflect income to the Debtor during 2014 and 2015 that he did not report on his Statement of Financial Affairs.

    h.      The Debtor claimed on his Schedules to have only $500 in cash, but actually had in excess of $20,000 in his Bank of America, N.A. bank account.

34. In light of the foregoing, the Court should enter an order denying the Debtor's discharge of debts under 11 U.S.C. §727(a)(4).

### COUNT IV

*(To Deny the Debtor a Discharge of Debts under 11 U.S.C. § 727(a)(5))*

35. The Trustee re-states and re-alleges all of the allegations contained in paragraphs 1-34 above and incorporates them into this count.

36. Despite requests from the Trustee for both documentation and testimony, the Debtor has failed to explain satisfactorily the loss of assets associated with 27 Lynde and the

transaction with Queiroz, the sale of his stock in Supreme, and the withdrawals out of the Bank of America account he shared with his spouse prior to and after the Petition Date.

37. As a consequence, the Court should enter an order denying the Debtor's discharge of debts under 11 U.S.C. §727(a)(5).

## COUNT V

*(To Deny the Debtor a Discharge of Debts under 11 U.S.C. § 727(a)(6))*

38. The Trustee re-states and re-alleges all of the allegations contained in paragraphs 1-37 above and incorporates them into this count.

39. Despite requests from the Trustee at and in connection with his initial meeting of creditors, the Debtor has refused to provide testimony concerning, among other things to be adduced at trial, the use to which the proceeds from the sale of his stock in Supreme and the deposits into and withdrawals out of the Bank of America account he shared with his spouse.

40. As grounds for this refusal, the Debtor has asserted that he is disqualified from providing such testimony because it would be based upon communications he had with his spouse. Notwithstanding this assertion, the Debtor has denied having communications with his spouse concerning these subjects.

41. In light of the foregoing, the Court should enter an order denying the Debtor's discharge of debts under 11 U.S.C. §727(a)(6).

### III. Conclusion

WHEREFORE, the Trustee respectfully prays that this Court enter

1. a judgment in favor of the Trustee and against the Debtor under each of Counts I, II, III, and IV;

2. An order denying the Debtor a discharge of debts under 11 U.S.C. §§727(a) (2), (a)(3), (a)(4), (a)(5), and/or (a)(6), and

3. Any and other such further relief as is necessary and proper.

JOHN O. DESMOND, CHAPTER 7
TRUSTEE OF THE BANKRUPTCY
ESTATE OF ROMULO A. RODRIGUES-
AGUIAR,

By his attorneys,

Dated: February 10, 2016

*/s/ Jeffrey D. Ganz*
Jeffrey D. Ganz (BBO #564375)
Riemer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts 02108
Tel: (617) 880-3568
Fax: (617) 692-3568
Email: jganz@riemerlaw.com

1941741.3

12